IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| Turiyan M. Gold,<br>Pro Per<br>      Plantiff, <br><br>v.<br><br>Prime minister of Canada, Stephen Harper<br>Attorney general of Canada<br>The Crown Attorney of Ottowa<br>The Crown Attorney of Toronto<br>Ministry of Transportation<br>Minister of Labour, Lisa Raitt<br>Air Canada<br>ACE Aviation Holdings Inc. (TSX:ACE.RV, TSX:ACE.B)<br>Royal Canadian Mounted Police (RCMP)<br>Vancouver police department<br>Ontario Securities Commission<br>Commission des Valeurs Mobilières du Québec (CVMQ)<br>Toronto international airport (YYZ)<br>Vancouver international airport (YVR),<br><br>      Defendants, | No.<br>8:12-CV-2089-T33TGW |

## COMPLAINT

Plaintiff Turiyan M. Gold, for its Complaint against defendant(s): The Prime minister of Canada, Stephen Harper; The Attorney general of Canada; The Crown Attorney of Ottowa; The Crown Attorney of Toronto; The Ministry of Transportation; The Minister of Labour, Lisa Raitt; Air Canada; ACE Aviation Holdings Inc. (TSX:ACE.RV, TSX:ACE.B); Royal Canadian Mounted Police (RCMP); Vancouver police department; Ontario Securities Commission ; Commission des Valeurs Mobilières du Québec (CVMQ); Toronto international airport (YYZ); Vancouver international airport (YVR), alleges as follows:

## INTRODUCTION

1. This is a complex and multifaceted case that's forms an organized whole around a nexus of conspiracy, duplicity, fradulent concealment and corruption. I have ennumerated each paragraph to simplify the formation of the complaint. As pro se litigant I have no formal background in law.
2. **This litigation deals with the issues concerning the unethical business practices concerning ticket sales, the infrastructure issues of Canada, and the broad scope of the conspiracy to hide problems with the airline, the airports in which the airlines operate and**



the infrastructure issues of Canada as a whole which effected the function of its public and private enterprises. I also speak to the unethical and dishonest behavior of those employed by its agencies and enterprises.
3. Towards the end of the introduction I will go into more about the power outages and infrastructure issues which are at the core of the problem. An airline needs airport to operate out of and airline employee's have to have an airline to work for and a country needs the revenue that it gets from tourism and quite simply in who's best interests is it to shut down an operation that generates so much potential income or is the basis for ones livelihood?
4. It was reported that in 2002 Air Canada abandoned paper tickets in favor of all electronic tickets. In 2003 I purchased a ticket from Best Travel Network for a flight from Tampa International Airport (TPA) to Hong Kong International airport (HKG). It was of course an electronic ticket. It was faxed to me by the travel agency to my home and the ticket instructed me to call the ticket booth operating out of the Tampa International Airport at least 48 hours before my flight to confirm my itinerary.
5. There was no other wording or disclaimer saying that I would be refused entry into Canada or refused to travel to my destination according to some rule or regulation. I was not told of any problem with my ticket when I called to confirm my Itinerary. I was not told of any problem by those working at the Air Canada ticket booth in Tampa international airport. I was not told of any problems with my ticket when I passed through three customs checkpoints.
6. Only after my 12 hour layover was I told at the ticket booth that I was not going to be able to travel on my ticket as it was an "infraction". I was not the only one being told this. (finish)
7. This indicated that there is unmonitored and unregulated sales of infractionary electronic tickets showing a pattern of fraudulent concealment and or corruption and or bribery concerning any regulatory agency or persons who's job is to prevent such activity from occuring, fraudulent and deceptive business practice ie. Bait-and-switch, double-book, and the upselling of the most expensive refundable ticket available by the airline to those holding an infractionary ticket that was sold but not honored because it would incur an infration by the host country.
8. In addition to this, there is a failure to report, fix or maintain the facilities of the airport which include but not limited to: Air traffic control systems, ground radar, and power backup systems as well as monitoring of electronic ticket sales to prevent infractions. During my 12 hour layover in Toronto international airport, I witnessed power outages effecting the airport, I also witnessed issues with the computer networks and monitors that display flights on plasma or lcd tv screens.
9. I was not offered any refund, any upgrade, I was not forwarded to any supervisor, except the ones that upsold me a ticket costing over $2000 us dollars. I was no offered a standby flight home. I was not read aloud the law which said that I could not fly to my destination. I was not shown any paper or disclaimer. I had to return to Tampa, Florida by Greyhound bus back into the United states which took over 3 days.
10. Not only that, but when I was being "helped" the lady next to me was told of a scheme that both agents behind the desks agreed upon and with. That we can buy refundable tickets and travel to our destination and then refund the return leg to get around the

infraction of what another agent quoted to being something in the range of $130,000 per infraction.

11. As far as the ticket sales agents they are rude and incompetent as I'm sure many complaints filed with the airline will reveal. My passport was held behind the counter while I was "assisted" and I was given the impression that I could not walk away from the situation. I could never figure out why you would have the audacity to sell a ticket, then not honor it, but allow the person through customs checkpoints and through all the checks and balances only to turn around and sell them the same ticket only for about four times as much as they payed.

12. Why can't I just upgrade my ticket to round trip? How does it make sense that you sell someone a refundable ticket, then suggest them how to break the law generating another infraction, and not explain the ubsurdity of the proposition. That a second ticket that is refundable, is round trip. Why are you needing a round trip ticket to your destination if you did not originally live in Canada? I arrived to transfer flights, and I am then sold another ticket. Why? If I was prevented from entering Canada I'm sure they would have sent me back home, at least on a standby flight or simply billed me for the cost of the return flight.

13. Electronic tickets are transmitted by wire and thus infractions of wire fraud are occurring. Paper tickets would be mailed and thus, mail fraud infractions would be occurring. Due to the fact that there were several agents in different parts of the airport that all seemed to be acting as if this was routine, or they were coached or encouraged to upsell refundable tickets under any circumstance. This is conspiracy. The selling of what was called an "Infractionary ticket" is quite simply attempt to commit. As a matter of fact, I was passed through customs checkpoints with no issue. I was passed through ticket booths at the Tampa international airport with no issue and I was told of no issue over the phone when I confirmed my itinerary 48 hours before my flight. These are all individual infractions and predicates and attempts and conspiracy to commit wire fraud as well as other predicate and nonpredicate acts.

14. A question arises, how can a quasi-monopoly like Air Canada run in airports that are so poorly maintained and run, and how can we expect rules and regulations to enforce themselves?

15. How could this be a viable investment? Would you invest in a company that is run and handled in this way? Would you look forward to dealing with the people that work for the airlines? In 2003 while they were still in "bankruptcy protection" HK businessman Li tzar-koi hereon refered to as Victor Li offered to bid for the airline.

16. This sale was under duress as the pattern of racketerring behavior was concealed. And the safety violations covered up. There is no way this airline could operate without a conspiracy of silence. Just as when Air Canada acquired CAI and found out later things were worse than they were made to believe. They inherited the debt as well as the asset and the debt exceeded the asset.

17. Investment as it is defined under 1962(a) facilitates further injuries and results in a pattern of cumulative violations by continuing of a racketeering enterprise who's debt-to-income ratio is too low and who's viability as a publicly traded company is questionable. Ironically, the disparity between debt and income is due to mergers and acquisitions which makes Air Canada the dominant provider in Canada whom profits from interstate and or foreign commerce.

18. In 2000, Air Canada acquired Canadian Airlines International (CAI). It was reported in Febuary 1990 that Air Canada generated $400 million from trans-border routes while CAI generated only $50 million.
19. 10 years later it is 2012 and I have serious questions about how a company that has been in the red for so long can remain in business.
20. Air Canada has maintained interest and control of the airline from the get go. No one has been able to make any significant changes to the airline so that it can turn a profit. I am even questioning the bid to Victor li who was sold 32% of Air Canadas equity. Yet Canadian law states that no foreign enterprise can own more than 25 percent. What exactly did Victor li get for his money?
21. Victor li's father is Li ka-shing well known and respected as the worlds 5th richest man. As a matter of fact, when Victor li was younger he was held for ransom and his father paid $500 million out of pocket. The money was never recovered. The Li family alone could from its own money make this airline work. But I know Victor was unaware of the issues when he made his bid.
22. They even went so far as to accuse Victor Li to having ties to organized crime. The claims were baseless and they were never able to prove anything. What they were worried about is they put the airline up for bid and the 5th riches mans son shows up who is also a Canadian citizen and they had to figure out how to string him along and give him the run around. Antitrust is not the scope of this litigation but there is a strong case for it as well as issues concerning NAFTA.
23. If Victor Li was aware of the issues, why would he essentially waste his money on a "Lemon airline" with so much debt and so much civil and criminal liability attached to its operations? This litigation is addressing just these very issues.
24. There is a term used by some "Robbing peter to pay paul". Racketeering is simply defined as a repeated pattern of violating federal law for the purposes of making money. This certainly satisfies a loose definition of section C of the RICO acts requirements. However, what of section B?
25. Through mergers of smaller airlines, selling of equities, the paying out of "fines" which to me seem like bribes to keep the airline out of litigation with the courts, as well as seeking bankruptcy protection to avoid litigation(s) the Defendants have maintained interests and control of the enterprise in such a matter as to build it to be the dominant carrier in Canada.
26. Not only that but considering the non-predicate allegations, costly safety and code violations were unfixed to save money in the interests of profit. I can only imagine what is going on with the non-leased jetliners they own. In 2004 an international Air Canada flight disintegrated in mid air killing everyone onboard.
27. "Robbing peter to pay paul":. The Airline has not been profitable for years, and has always had more debt that positive cash flow or assets. How is it possible that you can maintain such an "albatross" enterprise and not fail except through violation of federal laws, codes, treaties that by definition is a pattern of racketeering activity?
28. Through mergers of smaller airlines, selling of equities, the paying out of "fines" to keep the airline out of litigation with the courts, as well as seeking bankruptcy protection to avoid litigation the Defendants have maintained interests and control of the enterprise in such a matter as to build it to be the dominant carrier in Canada. Not only that but

considering the non-predicate allegations, costly safety and code violations and infrastructure left unfixed to save money in the interests of profit.
29. It was reported that Air Canada made a $92-million bid for Canadian leaving Canada with one dominant airline carrier.
30. On Sept. 19, 2001 Robert Milton, then CEO of Air Canada asked for $4 billion in taxpayer money from the provice of Ottowa to aid the airline essentially a bail-out of a publically listed company. Is this legal?
31. Air Canada obtained $700 million USD in bridge financing from GE Capital, bridge financing is considered securitys under the statutes.
32. Air Canada even gave $1,000,000 in bribes to regulators The Ontario Securities Commission, The Commission des Valeurs Mobilières du Québec (CVMQ) to keep a case of Securities fraud from ever going to trial. This indicates that securitys fraud has occurred but was never prosecuted. And for the record the statute of limitations on this crime keeps retolling. The payment of a "settlement" to regulating commissions to me is as analog a declairation of guilt as your going to get.
33. Air Canada told selected analysts about lower profits before making the information public.
34. The Ontario Securities Commission and the Quebec Securities Commission charged Air Canada with violating securities regulations when the company left telephone messages after stock trading hours on Oct 5, 2000.
35. The airline told 13 analysts that its earnings in the second half of last year were going to be $140 million under original expectations.
36. Air Canada did not make that news public until the very end of the trading session on Oct. 6.
37. The day after Air Canada informed the analysts, the company's stock opened $1 lower at $14. It dipped as low as $12.85, before closing at $13.25.
38. In the first full day of trading after the earnings warning became public on Oct. 6, Air Canada's stock dropped as low as $12.50. The stock closed at $12.90.
39. It was reported that Air Canada's parent company Ace aviation raised $600 million by issuing stock and senior notes to raise $540 million to pay General Electric Capital Corp.
40. It was reported that Air Canada's parent company ACE Aviation Holdings Inc. (TSX:ACE.RV, TSX:ACE.B) filed prospectuses in Canada for $350 million worth of voting shares and $250 million in senior notes.
41. It was reported that Air Canada has obtained commitments from a syndicate of lenders for a two-year revolving loan totalling $300 million.
42. It was reported that GE Capital provided $540 million in exit credit before Air Canada emerged from 18 months of court protection from creditors.
43. Conspiracy is indicated by the actions and behavior of several of the employee's of Air Canada airline and the Toronto airport. Reiterating statements in the introduction, after my 12 hour layover had "expired" which just happened to be when the "International/Vancouver" gate was opening at one end of the Toronto airport.
44. I went up to the ticket booth and stood in line. As I was waiting a lady next to me who was a Chinese and Canadian dual-national was told she cannot travel on the ticket she had because it was invalid. I had the same kind of ticket and was wondering if this was a classic case of random application of an arbitrary rule.

45. This was not the case, as I handed my ticket over to the lady behind the counter. She asked what She pointed to the screen and said you cant do that. They acted confused on how to deal with the situation and another employee another row over and started stating that "they can fine use $130,000 per infraction" by honoring this ticket.
46. After a few minutes we are directed to another part of the airport, we exit this area and go back into the airport to wait at at ticket booth were "someone will help us". All it simply was was a ticket sales booth and we were rudely dealt with and told we cannot fly on the tickets we have because they are invalid.
47. I'm thinking, isn't it an infraction to sell a ticket that is an infraction? After all, I arrived in Toronto from Tampa, I passed through customs, they stamped my passport, I went through two other checkpoints. Things were fine according to customs. The Air Canada ticket booth employee's behind the counter at TPA did not say anything was wrong with my ticket and nothing was said when I confirmed my itinerary 48 hours before according to the instructions on the electronic ticket.
48. I did not say anything because there was no dealing with these people. What happened next was the real kicker. They were going to do me a favor and sell me a refundable ticket for $2100 over 4x what I paid for one way. Round trip would have only been a few hundred more than that. Then on top of that, they told me how to get around the rules.
49. I simply have to fly to my destination and sell the return leg by going to the ticket counter and refunding it. So I buy a ticket, travel on it, am allowed through customs but then stopped at the boarding gate and then sent to a "closer" at a ticket booth who sells me the most expensive kind of ticket possible and offers no other help or suggestions under the duress that it is against some rule imposing an infractionary fine of thousands of dollars.
50. Then proceeds to tell me how to get around the rule. Discovery and Motions would determine if anyone has even indeed been given a refund on a return leg on a round trip ticket according to this scheme. And when I scheme I mean scheme. This is a bait-and-switch. According to the news, Air Canada switched to all electronic tickets in favor over paper tickets in 2002.
51. I have never been able to find an answer to my question about if a refundable ticket is considered a type of bond like a green stamp or monetary insturment. Not simply a ticket.
52. This is not only conspiracy but clearly Mens rea scienter. The tickets themselves were and are infractions, they were simply not honored. The scheme also involved upselling the most expensive type of airline ticket to make more profit and never bothered to refund the unused portion or upgrade that ticket. Since the ticket is all electronic, it's a simple matter of making the computer "not say" what it says by modifying it. But that is the least profitable approach.
53. Its obvious to see whats going on here. This was my first discovery of injury and pattern concerning infractionary ticket sales.
54. This was not a matter of just one persons "first day on the job". This seemed matter of routine. If its an infraction, then why did you sell it and why are you continuing to sell them and who do these infractions go to and who governs and regulates the sale and transfer of electronic tickets? And of these refundable tickets?
55. According to reports, Air Canada obtained $700 million in bridge financing from GE Capital, bridge financing is considered a security under the statutes.

56. Paid $1,000,000 to regulators to prevent a case from going to trial to prevent costly bad press effecting the value of the publicly listed company. However, these regulatory agencies have no authority to levy such fines. This indicates that securities fraud has occurred but was never prosecuted.
57. Meaning that the statute of limitations has not run out on the securities fraud.
58. Minister of Labor, Lisa Raitt is the architect of the Harper government's Bill C-33 which has been reported to be "an affront to the Canadian Charter of Rights and Freedoms and Canada's obligations under international law." Quoting an article by the National Union. More business as usual I suppose. Making rules for other people to follow while operating outside the envelope of the civil, international, federal rules and regulations. And a great deal of violation of human rights for good measure.
59. In 2003 three days before the 9-11 attacks there was a power outage known as the Northeast blackout. Then New York state Governor Pataki claimed that it was "Canada's fault". When this occurred I was stunned. Here I am with knowledge and I can prove the fault was Canada. But they have had problems with the power grid for years. As a matter of fact. When I was at the Toronto airport in 2003, there were blackouts at the airport and there was no indication of any backup system. The computer systems and network were also down.
60. This is troubling for other reasons. In 1999 a man using the nickname DWC connected a radio scanner to his computer and intercepted cellphone calls. DWC was from Vancouver, BC. He apparently lives next to the Vancouver airport because he intercepted analog (AMPS) Cellphone traffic of employee's of Air Canada and the technicians of the Vancouver Airport speaking specifically about Blackouts effecting the "Air traffic control system and ground radar".
61. The incident of him intercepting and broadcasting the calls over the internet was covered in at least 2 Wired news articles. The reason being is that James glave, a wired news employee was present in the chatroom listening to the calls as they were broadcast over Winamp's Shoutcast service. DWC had a webpage on Slashdot with archives of the .mp3's.
62. Shortly after he was raided by the RCMP and arrested by the Vancouver police department and his equipment seized and his website shut down. What we thought was odd is that he had violated no known Canadian law at the time. Analog or AMPS cellphone calls are notoriously unsecure and in fact at that time were outdated. They are literally the equivalent of walkie- talkies.
63. It is my believe that this forms the core and crux of a larger conspiracy between Candian officials and agencies as well as state owned and controlled and or regulated business which I have refered to as the Defendants in this complaint. There are so many people with knowledge and information concerning violations of law and specific predicate acts,we have clear grounds for conspiracy.
64. This is also proven when we realize that what DWC did was not technically illegal at the time according to Canadian law, shortly after the law was revised. The RCMP and the Vancouver police department as well as other Canadian government officials and no doubt the employee's of the Vancouver International Airport are well aware of the issue have have apparently done nothing.
65. The problem is also compounded by Canadas highly questionable "Whistleblower" laws which only protect government officials. Why would government officials need

Whistleblower protection that ordinary Canadian citizens do not have? The sole reason for this is to produce an ersatz sovereign immunity in the instance where a government official is later found to have had knowledge that he should have reported but didn't.

66. Robbing peter to pay paul is a term people use and that sounds accurate to the original intent to the definition of a Racketerring enterprise only in legalese, that is: a enterprise that as a matter of routine violates federal, international and state laws for the purpose of making a profit.

67. You cannot run an airline without working air traffic control systems or ground radar! To reiterate, In 2003 during my 12 hour layover in Toronto international airport they experienced blackouts. What is important to note here is there are thousands of miles separating Toronto and Vancouver, BC. Vancouver, BC is close to the west coast of the United states, near Washington state. Toronto is above New York on the east coast of the United states. This indicates a very serious problem with the power grid in Canada. There was a blackout in 1989 that others liked to have been able to blame on Canada.

68. Yet here I am alleging just that. Not is Canada responsible for the Northeast blackouts, but these outages have affected the function of the infrastructure of the airports in Canada, specifically the air traffic control systems and the ground radar at the Vancouver International Airport which the DWC recordings and broadcasts of Airport and Airline employees stated. While I was at the Toronto International Airport in 2003 it experienced power outages as well. There is no way you could spend any significant time in a Canadian airport and not notice that it has issues with its infrastructure. This speaks to a larger conspiracy, and concealment.

69. You cannot run and operate an airline within the envelope of rules and regulations in airports that have infrastructure problems and you cannot legally, lawfully and ethically operate an airline and airport safely without working ground radar and air traffic control systems and without working backup power systems.

70. Since the Y2K scare we were told a lot about Power grids. They can behave like a domino effect going off and setting off in a chain other events. But I feel the issue concerning what DWC mistakenly uncovered when he intercepted analog cellphone traffic in 1999 will lead to the discovery of a larger conspiracy and coverup.

71. The interests in Canada in the survival of its "flagship airline" Air Canada, which operates out of Canadian airports, some named as defendants () and () is too great to deal with the simple fact that it is mismanaged, misrun and ... Its an exercise in futility to keep an airline like this running. But someone is clearly profiting from it

72. I feel its market value market value is highly questionable and its operation is not only unsafe but operates in violation of federal laws for the purpose of profit to define its operations as Racketeering activity. In the absence of any precedence where a state owned, or ersatz publicly traded airline or airport being penalized for violations of international, federal, civil and human rights in a manner to force it to make significant changes to its operations.

73. Several states other than New York were affected by the 2003 Blackout. As well as several Canadian provinces. According to reports, the estimated cost of rebuilding the infrastructure stateside to prevent a power outage similar to the one of 2003 (I have not even alleged the 1989 outage) is approximately Fifty-billion US dollars ($50,000,000,000). I can only imagine the costs that have been avoided by simply ignoring the issues with the Canadian power grid. Could you have imagined the political

and economic implications of a blackout similar to the one in 2003 and 1989 effected the function of the nuclear power plants in New York and New Jersey causing meltdowns?
74. It has been also been reported that in July of 2001, Air Canada already plead guilty to securities fraud as "Selective disclosure" and I consider in certain circumstances the airline to be a continuation of a financial crimes enterprise under 18 USC § 225
75. The simple answers is that there is no one to enforce the rules and I feel the defendants and their employees feel they are above the law. Najaruna said: "When the fear comes from the protector, who protects you from that fear?"
76. This litigation deals with these issues.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over this action pursuant to 18 U.S.C. § 1964, 18 USC § 225, diversity pursuant to 95 U. S., 714, Long arm statutes: International shoe, the Illinois Statute, the Uniform Interstate and International Procedure Act, and supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

3. Venue is proper in this judicial district pursuant to 18 U.S.C. § 1965 and 28 U.S.C. § 1391 because Air Canada is subject to personal jurisdiction in this judicial district and has contracts and contacts in this district.

**PARTIES**
4. Plaintiff Turiyan M Gold is filing Pro Per a private right of action as Pro Se prosecutor under 1964(c) with is a resident of the state of Florida and a Naturalized Citizen of the United states.
5. Defendant Air Canada was privatized in 1988 under the Air Canada Public Participation Act and thus is a corporation with its principal place of business in the country of Canada and its principle headquarters is at the Air Canada Centre in Montreal-Ontario. The other Defendants as entities capable of holding a legal or beneficial interest in property are:

1. Parent company to Air Canada, ACE Aviation Holdings Inc.
2. Toronto international airport (YYZ)
3. Vancouver international airport (YVR)
4. Ministry of Transportation, Lisa Raitt

All are involved in the business of interstate and or foreign commerce.

## FACTUAL ALLEGATIONS COMMON TO ALL RICO COUNTS

*Culpable Persons*

The following cited defendants are Culpable Persons as a result of their duties:

Prime minister of Canada, Stephen Harper
Attorney general of Canada
The Crown Attorney of Ottowa
The Crown Attorney of Toronto
Ministry of Transportation, Lisa Raitt

Air Canada
ACE Aviation Holdings Inc. (TSX:ACE.RV, TSX:ACE.B)
Royal Canadian Mounted Police (RCMP)
Vancouver police department
Ontario Securities Commission
Commission des Valeurs Mobilières du Québec (CVMQ)
Toronto international airport (YYZ)
Vancouver international airport (YVR)

Prior to the Air Canada Public Participation Act, Air Canada was an enterprise who's shares were held in trust by the Minister of Transportation on behalf of the Crown. As such the Prime minister as CEO has some management duties over the airline and the airports and agencies and the citizens that are employee's of the various enterprises.

The following cited defendants may not have act within the scope of their duties:

Prime minister of Canada, Stephen Harper
Attorney general of Canada
The Crown Attorney of Ottowa
The Crown Attorney of Toronto
Ministry of Transportation, Lisa Raitt
Royal Canadian Mounted Police (RCMP)
Vancouver police department
Ontario Securities Commission
Commission des Valeurs Mobilières du Québec (CVMQ)

### *Enterprise.*

Air Canada, the Toronto International Airport and the Vancouver International Airport and ACE Aviation Holdings Inc. specifically are enterprises according the the definitions of the statutes.

### *Interstate or Foreign Commerce.*

Air Canada is often referred to as Canada's "flagship airline" and has been the dominant provider for several years. And it can be derived from the name that it is an Airline that operates out of Airports that performs the duties of airlines and services inside of airports and inside of commercial airliners.

As of 2002 all Air Canada's tickets were Electronic in favor over traditional Paper tickets. Electronic tickets and travel reservations occur over "wires" internationally to licensed travel agents. According to reports, It is stated that "50% of Air Canada's revenue is from trans-border and international flights". Thus it can be determined that the above stated defendants are all involved in some way in Interstate or Foreign Commerce.

***Pattern of Racketeering.*** Section 1961(5) defines a "pattern of racketeering" as "at least two acts of racketeering activity. The Plantiff can speak of his own personal injuries and rico injuries and

witnessed other injuries and rico victims of at least two acts of racketeering activity in the form of infractionary electronic ticket sales as violations of 18 USC § 1343 Fraud by wire, radio, or television and 18 USC § 1349 Attempt and conspiracy, Air Canada has also been guilty of 18 USC § 1348 - Securities and commodities fraud, and I am alleging 18 USC § 157 - Bankruptcy fraud, 18 USC § 1344 - Bank fraud,18 USC § 152 - Concealment of assets; false oaths and claims; bribery

**The functions and duties of airlines and the services of airports are designed to serve high-volumes of people, thus the predicate acts mentioned are related and continuous forming a "pattern of racketeering activity" and are established as an open-ended pattern of predicates that** also may occur under duress and fraudulent concealment.

As a matter of fact, while drafting this complaint over the course of a few days, I repeatedly discovering new injuries and new and independent furthering of injuries resulting in numerous cumulative violations.

### *Statute of Limitations*

There is already a preponderance of evidence and guilt beyond a reasonable doubt concerning **certain predicate and non-predicate acts in the allegations. In the last week of July 2001 Air Canada pleaded guilty to "Selective disclosure" a violation of the Securities Act and voluntarily paid $1,000,000 to two regulatory agencies, Ontario Securities Commission and the Commission** des Valeurs Mobilières du Québec (CVMQ) to keep the case out of court.

I consider this an admission of guilt for the crime of securities fraud, and therefore a preponderance of evidence for violations of 1962(a) as well as qualifying for the definition of a continued financial crimes enterprise according to 18 USC § 225.

**On 1 April 2003, Air Canada filed for protection under the Companies' Creditors Arrangements Act; it emerged from this protection on 30 September 2004. I am alleging Title 11 and fraud under 18 USC § 157 in that Air Canada used Bankruptcy intentionally to "avoid litigations of** Human Rights violations by litigants during that 18 months of bankruptcy protection" according to the accusations of the Canadian Transport Agency in 2005.

This as a basis qualifies as "admission of guilt" and "preponderance of evidence for the allegations in the criminal suit.

**I will also allege an open-ended pattern of predicates that occur under duress and fraudulent concealment except in motion V where I am alleging no fraud only conspiracy as to the allegations of count V against the defendants.**

### COUNT I
### RICO Section 1962(c)

7. The allegations of paragraphs 1 through 13 are incorporated herein by reference.

8. This Count is against Defendant(s) Air Canada, Toronto international airport (YYZ) (the "Count I Defendant(s)").

9. Air Canada, and the Toronto international airport are enterprises engaged in and whose activities affect interstate and or foreign commerce. The Count I Defendant(s) are employed by or associated with the enterprise.

10. The Count I Defendant(s) agreed to and did conduct and participate in the conduct of the enterprise's affairs through a pattern of racketeering activity and for the unlawful purpose of intentionally defrauding Plaintiff. Specifically:

   1. 18 USC § 1343 Fraud by wire, radio, or television: The sale and electronic delivery of fraudulent or infractionary electronic tickets.
   2. 18 USC § 1349 Attempt and conspiracy: Attempt or Conspiracy to Double-book, overbill or upsell of a refundable ticket by various ticket agents to replace the original ticket upon arrival at the airport's international-Vancouver gate where the travelers are refused ongoing passes because the original ticket is "infractionary" then does not honor or refund or upgrade the ticket but rather ticket sales agents for the airline fully aware the ticket is an infraction proceed to sell the most expensive type of ticket. A refundable ticket. Then giving full instructions on how to evade the infraction(s) by selling the return leg back to the ticket booth upon arrival to ones destination.

11. Pursuant to and in furtherance of their fraudulent scheme, Defendant(s) committed multiple related acts which violate various federal, and international laws such as:

18 USC CHAPTER 47,18 USC § 1348,18 USC § 157,18 USC § 1344,18 USC § 152,18 USC § 892, FAA codes,18 USC § 1343. Fraud by wire, radio, or television, 18 USC § 1349 - Attempt and conspiracy, Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 & 26(a),Section 27 of the Exchange Act,15 U.S.C. §78aa; Section 22 of the Securities Act,15 U.S.C. § 77v; and 28 U.S.C. §§ 1331 and 1337,Non-Discrimination in Federally Assisted Programs of DOT,Effectuation of Title VI of the Civil Rights Act of 1964. 49 CFR 21,Convention on International Civil Aviation also known as the Chicago convention,The Montreal Convention,The Carriage by Air Acts,Canadian Charter of Rights and Freedoms,The Canadian Human Rights Act,Human Rights Commissions,Human rights laws and legislation of the province of British Columbia,Human rights laws and legislation of the province of Ottowa,Securities Exchange Act of 1934 (Rule 10b-5),Regulation FD,Sarbanes-Oxley Act,Bank and Thrift Fraud Prosecution Act of 1990, Ticket infractions.

12. The acts 18 USC § 1343, 18 USC § 1349 set forth above constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

13. The Count I Defendant(s) have directly and indirectly conducted and participated in the conduct of the enterprise's affairs through the pattern of racketeering and activity described above, in violation of 18 U.S.C. § 1962(c).

14. As a direct and proximate result of the Count I Defendants' racketeering activities and violations of 18 U.S.C. § 1962(c), Plaintiffs have been injured in their business and property in that:

Plantiff is representing his own interests in his personal damages as well as acting as Pro Se prosecutor under Federal Civil Rico 18 U.S.C. § 1962 and .

15. WHEREFORE, Plaintiff requests that this Court enter judgment against the Count I Defendant(s) as follows:

Tort damages, liability, indirect, intangible, non-forseeable as well as personal injuries. remedies under 18 USC § 1964(c) such as treble damages and attorney fees Triple damages of ticket infractions and seizures and attorneys fees and equitable remedies. Pro se prosecutor under Federal Civil Rico 18 U.S.C. § 1962 I ask the court to seek remedies under 18 USC § 1964 such as 1964(a):

> The district courts of the United States shall have jurisdiction to prevent and restrain violations of section 1962 of this chapter by issuing appropriate orders, including, but not limited to: ordering any person to divest himself of any interest, direct or indirect, in any enterprise; imposing reasonable restrictions on the future activities or investments of any person, including, but not limited to, prohibiting any person from engaging in the same type of endeavor as the enterprise engaged in, the activities of which affect interstate or foreign commerce; or ordering dissolution or reorganization of any enterprise, making due provision for the rights of innocent persons.

As Pro Se prosecutor I ask for remedies under 18 USC § 225 for person(s) and organization(s) usually reserved a "continuing financial crimes enterprise" meaning a series of violations under section 215, 656, 657, 1005, 1006, 1007,1014, 1032, or 1344 of this title, or section 1341 or 1343 affecting a financial institution and pray for additional remedies under 18 USC § 225 wherever applicable eg. $10,000,000 for individuals or $20,000,000 if an organization.

## COUNT II
### RICO Section 1962(a)

16. The allegations of paragraphs 14 through 19 are incorporated herein by reference.
17. This Count is against Defendant(s): Air Canada, ACE Aviation Holdings Inc. (TSX:ACE.RV, TSX:ACE.B), The Ontario Securities Commission, The Commission des Valeurs Mobilières du Québec (CVMQ) .
18. Air Canada, Ace Aviation, are enterprises engaged in and whose activities affect interstate and or foreign commerce. The Ontario Securities Commission, The Commission des Valeurs Mobilières du Québec are regulatory agencies located in Canada who's activities affect enterprises that are engaged in interstate and or foreign commerce.
19. The Count II Defendant(s) used and invested income that was derived from a pattern of racketeering activity in an interstate and or foreign commerce enterprise. Specifically:

I. $92-million bid for Canadian (CAI) leaving Canada with one dominant airline carrier

II. On Sept. 19, 2001 Robert Milton, then CEO of Air Canada asked for $4 billion in taxpayer money from the provice of Ottowa to aid the airline.

III. Air Canada obtained $700 million US in bridge financing from GE Capital, bridge financing is considered a security under the statutes.

IV. Air Canada paid $1,000,000 in bribes to regulators The Ontario Securities Commission, The Commission des Valeurs Mobilières du Québec (CVMQ) to keep a case of Securitys fraud from ever going to trial. This indicates that securitys fraud has occurred but no final judgement was made.

V. Air Canada's parent company Ace aviation raised $600 million by issuing stock and senior notes to raise $540 million to pay General Electric Capital Corp.

VI. Air Canada's parent company ACE Aviation Holdings Inc. (TSX:ACE.RV, TSX:ACE.B) filed prospectuses in Canada for $350 million worth of voting shares and $250 million in senior notes.

VII. Air Canada has obtained commitments from a syndicate of lenders for a two-year revolving loan totalling $300 million.

VIII. GE Capital provided $540 million in exit credit to Air Canada before Air Canada emerged from 18 months of court protection from creditors.

20. The [racketeering activity listed above] constitutes a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

21. As a direct and proximate result of the Count II Defendant(s)' racketeering activities and violations of 18 U.S.C. § 1962(a), Plaintiffs have been injured in their business and property in that:

I. 18 USC CHAPTER 47 - Fraud and false statements, Generally subsections 1001, 1002, 1003, 1004, 1005, 1006, 1007, 1011, 1013, 1014, 1016, 1017, 1021, 1023, 1024, 1025, 1029, 1030, 1040 and specifically subsections 1031, 1032, 1034.
II. 18 USC § 1348 - Securities and commodities fraud
III. 18 USC § 157 - Bankruptcy fraud
IV. 18 USC § 1344 - Bank fraud
V. 18 USC § 152 - Concealment of assets; false oaths and claims; bribery
VI. 18 USC § 225 - Continued financial crimes enterprise for a series of violations under section 215, 656, 657, 1005, 1006, 1007, 1014, 1032, or 1344 of 18 USC § 225, or section 1341 or 1343.

I ask that the court apply 18 USC § 1964(d) to determine final judgement of guilt to securities fraud based on the publicized unofficial "negotiated settlement" between Air Canada and regulatory agencies. In this special circumstance I am claiming Securities fraud as a predicate

act and a rico injury under 1962(a) as well as Title 11 Fraud as a predicate act and RICO injury as well.

22. WHEREFORE, Plaintiff requests that this Court enter judgment against the Count II Defendant(s) as follows:
Acting as Pro Se prosecutor I am praying for amount of no less than $1,000,000 US dollars and remedies under 18 USC § 1964(c) such as treble damages plus 50% of forfeitable property and attorney fees and equitable remedies. As Pro se prosecutor under Federal Civil Rico 18 U.S.C. § 1962 I ask the court to seek remedies under 18 USC § 1964 such as 1964(a):

> The district courts of the United States shall have jurisdiction to prevent and restrain violations of section 1962 of this chapter by issuing appropriate orders, including, but not limited to: ordering any person to divest himself of any interest, direct or indirect, in any enterprise; imposing reasonable restrictions on the future activities or investments of any person, including, but not limited to, prohibiting any person from engaging in the same type of endeavor as the enterprise engaged in, the activities of which affect interstate or foreign commerce; or ordering dissolution or reorganization of any enterprise, making due provision for the rights of innocent persons.

## COUNT III
### RICO Section 1962(b)

23. The allegations of paragraphs 20 through 35 are incorporated herein by reference.
24. This Count is against Defendant(s) Air Canada, Toronto international airport (YYZ), Vancouver international airport (YVR) (the "Count III Defendant(s)").
25. Air Canada is an enterprise engaged in and whose activities affect interstate and or foreign commerce.
26. The Count III Defendant(s) acquired and maintained interests in and control of the enterprise through a pattern of racketeering activity. Specifically:

1. 18 USC § 1348 - Securities and commodities fraud
2. 18 USC § 157 - Bankruptcy fraud
3. 18 USC § 1344 - Bank fraud
4. 18 USC § 152 - Concealment of assets; false oaths and claims; bribery
5. 18 USC § 892 - Making extortionate extensions of credit: As double-booked refundable tickets.
6. 18 USC CHAPTER 47 - Fraud and false statements
7. 18 USC § 152 - Concealment of assets; false oaths and claims; bribery
8. 18 USC § 1033 - Crimes by or affecting persons engaged in the business of insurance whose activities affect interstate commerce
9. 18 USC § 225 - Continued financial crimes enterprise for a series of violations under section 215, 656, 657, 1005, 1006, 1007,1014, 1032, or 1344 of 18 USC § 225, or section 1341 or 1343.

As Pro Se prosecutor allege violations of 18 USC § 225 and ask for remedies under 18 USC § 225 for qualified person(s) and organization(s) usually reserved a "continuing financial crimes

enterprise" meaning a series of violations under section 215, 656, 657, 1005, 1006, 1007,1014, 1032, or 1344 of 18 USC § 225, or section 1341 or 1343 .

27. The [racketeering activity listed above] constitutes a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

28. The Count III Defendant(s) have directly and indirectly acquired and maintained interests in and control of the enterprise through the pattern of racketeering activity described above, in violation of 18 U.S.C. § 1962(b).

29. As a direct and proximate result of the Count III Defendant(s)' racketeering activities and violations of 18 U.S.C. § 1962(b), Plaintiffs have been injured in their business and property through violations of:

18 USC § 892,18 U.S.C. § 894,18 USC CHAPTER 47,Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 & 26(a),Section 27 of the Exchange Act,15 U.S.C. §78aa; Section 22 of the Securities Act,15 U.S.C. § 77v; and 28 U.S.C. §§ 1331 and 1337,Non-Discrimination in Federally Assisted Programs of DOT,Effectuation of Title VI of the Civil Rights Act of 1964. 49 CFR 21,Convention on International Civil Aviation also known as the Chicago convention,The Montreal Convention,The Carriage by Air Acts,Canadian Charter of Rights and Freedoms,The Canadian Human Rights Act,Human Rights Commissions,Human rights laws and legislation of the province of British Columbia,Human rights laws and legislation of the province of Ottowa,Securities Exchange Act of 1934 (Rule 10b-5),Regulation FD,Sarbanes-Oxley Act,Bank and Thrift Fraud Prosecution Act of 1990.

30. WHEREFORE, Plaintiff requests that this Court enter judgment against the Count III Defendant(s) as follows:

Non-predicate damages, Damages under 18 USC § 1964(a): Triple damages of the predicate acts under 18 USC 1962, 50% of forfeitable property and Attorneys fee's. Triple damages of Infractionary fines. As Pro Se prosecutor under USC 1962 I am asking the court also to consider remedies under 18 USC § 1964(c) ie. Equitable remedies.

As well as Tort damages, liability, indirect, intangible, non-forseeable as well as personal injuries. As Pro Se prosecutor I also ask for remedies under 18 USC § 225 wherever applicable.

## COUNT IV
### RICO Section 1962(d)

31. The allegations of paragraphs 42 through 57 are incorporated herein by reference.

32. This count is against Defendant(s) Air Canada, Toronto international airport (YYZ), Vancouver international airport (YVR) (the "Count IV Defendant(s)").

33. As set forth above, the Count IV Defendants agreed and conspired to violate 18 U.S.C. §§ 1962(a) (b) and (c). Specifically:

Predicate:

1. 18 USC § 1343 Fraud by wire, radio, or television : The sale and electronic delivery of fraudulent or infractionary electronic tickets.
2. 18 USC § 1349 Attempt and conspiracy: Attempt or Conspiracy to Double-book, overbill or upsell of a refundable ticket by various ticket agents to replace the original ticket upon arrival at the airport's international-Vancouver gate where the travelers are refused ongoing passes because the original ticket is "infractionary" then does not honor or refund or upgrade the ticket but rather ticket sales agents for the airline fully aware the ticket is an infraction proceed to sell the most expensive type of ticket. A refundable ticket. Then giving full instructions on how to evade the infraction(s) by selling the return leg back to the ticket booth upon arrival to ones destination.
3. 18 USC § 1033 - Crimes by or affecting persons engaged in the business of insurance whose activities affect interstate commerce
4. 18 USC § 892 - Making extortionate extensions of credit: As double-booked refundable tickets.
5. 18 USC CHAPTER 47 - Fraud and false statements
6. 18 USC § 225 - Continued financial crimes enterprise for a series of violations under section 215, 656, 657, 1005, 1006, 1007,1014, 1032, or 1344 of 18 USC § 225, or section 1341 or 1343.

34. The Count IV Defendants have intentionally conspired and agreed to directly and indirectly use or invest income that is derived from a pattern of racketeering activity in an interstate and or foreign commerce enterprise, acquire or maintain interests in the enterprise through a pattern of racketeering activity, and conduct and participate in the conduct of the affairs of the enterprise through a pattern of racketeering activity. The Count IV Defendants knew that their predicate acts were part of a pattern of racketeering activity and agreed to the commission of those acts to further the schemes described above.

35. That conduct constitutes a conspiracy to violate 18 U.S.C. §§ 1962(a), (b) and (c), in violation of 18 U.S.C. § 1962(d). 35. As a direct and proximate result of the Count IV Defendant(s)' conspiracy, the overt acts taken in furtherance of that conspiracy, and violations of 18 U.S.C. § 1962(d), Plaintiffs have been injured in their business and property in that:

Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 & 26(a),Section 27 of the Exchange Act, 15 U.S.C. §78aa; Section 22 of the Securities Act,15 U.S.C. § 77v; and 28 U.S.C. §§ 1331 and 1337,Non-Discrimination in Federally Assisted Programs of DOT,Effectuation of Title VI of the Civil Rights Act of 1964. 49 CFR 21,Convention on International Civil Aviation also known as the Chicago convention,The Montreal Convention,The Carriage by Air Acts,Canadian Charter of Rights and Freedoms,The Canadian Human Rights Act,Human Rights Commissions,Human **rights laws and legislation of the province of British Columbia,Human rights laws and legislation of the province of Ottowa,Securities Exchange Act of 1934 (Rule 10b-5), Regulation FD,Sarbanes-Oxley Act,Bank and Thrift Fraud Prosecution Act of 1990.**

36. WHEREFORE, Plaintiff requests that this Court enter judgment against the Count IV Defendant(s) as follows:

Infractionary penalties plus treble damages per Infraction, penalties under 18 USC § 1964(c) such as treble damages plus 50% of forfeitable property and attorney fees, Tort damages, liability, indirect, intangible, non-forseeable as well as personal injuries and equitable remedies.

As Pro Se prosecutor I will also allege from all counts and every paragraph of the introduction all defendants violations of 18 USC § 225 and ask for remedies under 18 USC § 225 usually reserved a "continuing financial crimes enterprise" meaning a series of violations under section 215, 656, 657, 1005, 1006, 1007,1014, 1032, or 1344 of this title, or section 1341 or 1343 affecting a financial institution under 18 USC § 225 wherever applicable.

## Count V:
## RICO Section 1962(d)

37. The allegations of paragraphs 57 through 75 are incorporated herein by reference.

38. This count is against Defendant(s) Prime minister of Canada, Stephen Harper;Ministry of Transportation;Air Canada;ACE Aviation Holdings Inc.;Royal Canadian Mounted Police (RCMP);Vancouver police department;Toronto international airport (YYZ); Vancouver international airport (YVR) (the "Count V Defendant(s)").

39. As set forth above, the Count V Defendants agreed and conspired to violate 18 U.S.C. §§ 1962(a)(b) and (c) specifically:

40. In the other counts I alleges fraud. Here I am not alleging fraud even if it is implied by any of the statutes or predicates below. I am only establishing conspiracy and under 1962(d) I am not required to provide "heightened pleading" per rule 9(b) of the FRCP.

41. As Pro Per I will To the best of my ability I will attempt to claim that to be responsible for the blackouts and power outages effecting New York in 2003 and the outages I experienced in 2003 at the Toronto International Airport and the outages that DWC intercepted (for the record he lived near the Vancouver International Airport) with his radio scanner that he broadcast over the internet on Internet Relay Chat and Winamp shoutcast.

42. This required a conspiracy between the RCMP, the Vancouver police department and the Canadian airports namely Vancouver International Airport and Toronto International Airport and various other agencies, directors, assistants and employee's of the defendants of Count V.

43. That conduct constitutes a conspiracy to violate 18 U.S.C. §§ 1962(a), (b) and (c), in violation of 18 U.S.C. § 1962(d). For the sole purpose of keeping the airlines, airports and economic and social machinery running for selfish self-interests and in the interests of self-preservation.

44. As a direct and proximate result of the Count V Defendants conspiracy and the overt acts taken in that conspiracy to commit 18 U.S.C. § 1962(d). The plaintiff has been hurt in his business and property in that:

I. Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 & 26(a)
II. Section 27 of the Exchange Act
III. 15 U.S.C. §78aa; Section 22 of the Securities Act
IV. 15 U.S.C. § 77v; and 28 U.S.C. §§ 1331 and 1337
V. Non-Discrimination in Federally Assisted Programs of DOT
VI. Effectuation of Title VI of the Civil Rights Act of 1964. 49 CFR 21
VII. Convention on International Civil Aviation also known as the Chicago convention
VIII. The Montreal Convention
IX. The Carriage by Air Acts
X. Canadian Charter of Rights and Freedoms
XI. The Canadian Human Rights Act
XII. Human Rights Commissions
XIII. Human rights laws and legislation of the province of British Columbia
XIV. Human rights laws and legislation of the province of Ottowa
XV. Securities Exchange Act of 1934 (Rule 10b-5)
XVI. Regulation FD
XVII. Sarbanes-Oxley Act

I am praying for relief of count V in the amount of Thirty-two Billion ($32,000,000,000) US dollars as Tort liability, indirect, intangible, non-forseeable as well as personal injuries by reasons of subsections 1-18, saving any concerning fraud of any kind of Count V and of the remedies as Rico injurys under 1964(c) when applicable to the non-rico predicates of subsections 1-18. I am praying for attorneys fee's plus 50% of forfeitable property.

Representing myself as Pro Se prosecutor I ask for court to exercise 1964(a) on any and all predicates of subsections 1-18 and allegations of Count VI when considering further civil remedies ie. equitable remedies.

PLAINTIFF DEMAND TRIAL BY JURY.

Dated:

Turiyan M Gold
711 58th St So #6
Gulfport, FL 33703
USA
Phone: 727-252-4528

Signed: *[signature]*